**John Earl WATKINS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17797.**

Court of Criminal Appeals of Oklahoma.

April 3, 1973.

Charles Dunn, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant, John Earl Watkins, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. CRF–71–2039, for the offense of Robbery By Force or Fear. His punishment was fixed by the jury at a term of five (5) years imprisonment which was subsequently modified by the trial court to a term of eighteen (18) months imprisonment with the balance of three and one-half (3½) years to be suspended. From said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Jerry Wayne Anderson testified that on the evening of November 5,

1971, he and his wife went to the Top Hat Lounge. He spoke to the defendant, whom he had known for several years. He testified that he had previously shot pool with the defendant and discussed a fishing trip. They stayed at the lounge until it closed and then proceeded to the Eldorado Club. They stayed at the Eldorado Club until 3:00 a. m. and returned home. At approximately 4:30 a. m., the defendant and his wife, Kathy, knocked on the door. He testified that the defendant was "pretty drunk". The defendant asked him to wake his wife up and he told him that she was asleep. He told them that he had to go to work at 5:00 a. m. and they left. He left home at approximately 4:45 a. m. and received a telephone call at 5:30 a. m. He returned home and observed his wife's lip was cut, the television and various items of clothing were missing. On December 11, 1971, the defendant telephoned him and said, "Do you think you might want to make a cash sale on this?". (Tr. 27) He testified that as he was leaving for work he thought he saw the defendant's car down the street.

Eva Anderson testified that she was married to Jerry Anderson and had known the defendant casually for several years. On one occasion, she and her husband planned to go on a fishing trip with the defendant and his wife which did not materialize. She testified that she had previously been employed as a go-go dancer at the Top Hat Lounge. On the evening in question, she spoke to the defendant and Kathy at the lounge. Upon leaving the Top Hat Lounge, they went to the Eldorado Club, leaving there at approximately 3:00. They returned home, played a game of Rummy and she dozed off on the bed. Her husband went to work at approximately 4:45 a. m. and at about 5:00 she heard a knock on the door. She opened the door and observed the defendant and Kathy standing in the doorway. Kathy stated, "I don't feel like going home, and I want to come in and talk some more." (Tr. 64) They came into the house, sat down in the living room and talked for a few minutes. The defendant went outside to get Kathy's cigarettes and upon returning said, "Kathy, the car's running, are you ready to go?". (Tr. 67) The defendant then said, "Alright, Shiela, get over there in that chair." (Tr. 67) The defendant repeated the order and when she complied said, "Alright, now, strip." (Tr. 68) The defendant started to pick up the television and she got up from the chair. Kathy grabbed her around the body and held her. She managed to get away from Kathy and ran toward the kitchen. Kathy followed her, grabbed her around the neck and put her hand over her nose and mouth. She bit Kathy's finger and the defendant grabbed her around the neck. They pushed her onto the bed and Kathy continued holding her hand over her nose and mouth. The defendant took almost all of her and her husband's clothing including her go-go costumes. Kathy said, "Please quit fighting me. Please. He's got a gun, and he'll use it." (Tr. 73) The defendant made five or six trips to the car while she was still being held by Kathy. She testified that she received scratches on her face and her lip was busted. The defendant finally told Kathy to come on and they drove away in their car. She ran next door and had the neighbor call the police.

Officer Larry Raulston testified that he answered a call to the Anderson residence at approximately 5:25 a. m. Mrs. Anderson was on the porch next door and reported that "she had been burglarized, or someone had broken into her house." (Tr. 103) Mrs. Anderson's lip was bleeding and she had red marks on her arms and legs. She reported certain items were missing and identified the perpetrators as John and Kathy.

The defendant testified in his own behalf that he was twenty-eight years old and had lived in Tulsa nearly all his life. He first met the Andersons at the Top Hat Club and had known them for approximately two and one-half years. They sat together almost every Friday night at the

club and visited about fishing. On the evening in question, he talked to them for a few minutes at the club. Upon leaving the club, he and Kathy went to the Doll House and stayed until it closed at approximately 3:00. They then went to the Denver Grill and ate. As they were going home, they went by the Anderson's house and observed the lights were on. They went into the house and talked to Jerry for about ten minutes. Jerry told them that he had to be at work at 5:00 and they left, going straight home. He denied returning to the residence and robbing Mrs. Anderson.

Sanda Galcatcher testified that she was employed as a bartender at the Top Hat Lounge. She was friends with both the Andersons and the defendant and had been for approximately two years. She testified that she observed Shiela Anderson wearing clothes and costumes after November 6, 1971 which had been allegedly stolen.

James Bryant and Officer Raulston testified that the defendant's reputation for truth and veracity was good.

■ The sole proposition asserts that the verdict and judgment is not sustained by sufficient competent evidence. From the foregoing statement of facts, we are of the opinion that the testimony of Eva Anderson, if believed, was sufficient to sustain the verdict of the jury. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., and BRETT, J., concur.